IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Newport News Division**

FILED

JUL  5 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**JEFFREY J. NELSON & ASSOCIATES, Inc.,**
**d/b/a EXPERT OJT, et al.,**

     **Plaintiffs,**

**v.**               **Civil Action No. 4:11cv75**

**PETER A. LEPORE, et al.,**

     **Defendants.**

## ORDER AND OPINION

This matter comes before the Court on Plaintiffs' Motion to Dismiss Defendants'

Counterclaim, doc. 25, and Defendants' Cross Motion to Dismiss for Lack of Personal

Jurisdiction, docs. 30-32. For the reasons stated herein, the Court **GRANTS IN PART** and

**DENIES IN PART** Plaintiffs' Motion to Dismiss Defendants' Counterclaim. Further, the Court

**DENIES** Defendants' Cross Motion to Dismiss for Lack of Personal Jurisdiction.

### I. PROCEDURAL HISTORY

Plaintiffs Jeffrey J. Nelson and Jeffrey J. Nelson & Associates, Inc. ("Plaintiffs") filed

their complaint on May 5, 2011. Doc. 1. On December 20, 2011, Defendants Expert OJT, Inc.

("EOJT"), Generative Learning Systems, Inc. ("GLS"), and Peter A. LePore ("LePore") filed

their Answer. Doc. 12. Mr. LePore's and EOJT's responsive pleadings were supposed to be

filed by December 8, 2011, while GLS's responsive pleading was due on or before December 20,

2011. Mr. LePore and EOJT, however, filed their Answer jointly with GLS on December 20,

2011. Thus, on December 27, 2011, Defendants Mr. LePore and EOJT filed a motion for leave

to file an untimely responsive pleading pursuant to Fed. R. Civ. P. 6(b), which was opposed by Plaintiffs. Plaintiffs agreed to withdraw their opposition based upon Defendants' representation that their Third-Party Complaint would be voluntarily dismissed and amended responsive pleadings would be filed that omitted any claim against Christa Restaneo and Trudy Nelson.[1] An agreed order granting Defendants' motion for extension of time to answer was entered on January 17, 2012. Doc. 20. On January 18, 2012, Defendants filed their Amended Answer, which included the affirmative defense of lack of personal jurisdiction for the first time. Docs. 21-23.

On February 6, 2012, Plaintiffs filed a Motion to Dismiss Defendants' Counterclaim. Doc. 25. On February 17, 2012, Defendants filed their response to Plaintiffs' motion, as well as a Cross Motion to Dismiss for Lack of Personal Jurisdiction. Docs. 27-32. Plaintiffs filed a reply to Defendants' response on February 23, 2012, and a response to Defendants' Cross Motion to Dismiss for Lack of Personal Jurisdiction on March 2, 2012. Docs. 36-37. On March 12, 2012, Defendants filed their reply to Plaintiffs' response to the motion to dismiss. Docs. 38-40.

## II. FACTUAL ALLEGATIONS[2]

In the complaint, Plaintiffs allege the following, see Doc. 1:

Plaintiff Nelson ("Nelson") is the sole owner and operator of Expert OJT ("EOJT"), which provides "on-the-job training" programs to corporate clients throughout the country. Id. at ¶ 9. Nelson, through EOJT, develops, owns, refines, and maintains a series of printed and

---

[1] Plaintiffs sent a letter to Defendants on December 22, 2011, along with a motion for sanctions pursuant to Rule 11, indicating that if the Third-Party Complaint was not withdrawn within 21 days, Plaintiffs would file the motion for sanctions with the Court.

[2] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant motions to dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

electronic materials that are used when EOJT employees and agents conduct these "on-the-job training" programs. Id. at ¶ 10. These materials are stamped with the "Expert OJT" or "EOJT" trade names and corporate logo. Id. at ¶ 11. Plaintiffs have been in exclusive and continuous use of the "Expert OJT" and "EOJT" trade names since 1990. Id. at ¶ 12. Expert OJT routinely hires "associates," who serve as independent contractors, to help service its clients. Id. at ¶ 15. Mr. LePore, a citizen of New York, was one of Expert OJT's associates for several years prior to 2010. Id. at ¶ 17. While serving as one of Expert OJT's associates, Mr. LePore and his company, GLS, was given access and license to use Expert OJT's copyrighted work and other materials for the sole purpose of serving Expert OJT's clients.[3] Id. at ¶ 18. The relationship with Mr. LePore and his company ended on or about March 21, 2011, when Plaintiffs discovered that Mr. LePore was engaging and contracting with clients using Plaintiffs' trade name without authorization or permission from Plaintiffs.[4] Id. at ¶ 19. According to Plaintiffs, Mr. LePore, through his companies GLS and EOJT, continues to contact existing and potential clients, as well as conduct training programs for corporate clients, using the "Expert OJT" and "EOJT" trade names. Id. at ¶¶ 22, 24.

On or about June 2, 2010, Mr. LePore registered a new corporation: defendant EOJT.[5] Id. at ¶ 25. Sometime in 2011, Mr. LePore created a website and registered the domain name, www.enterpriseojt.com. Id. at ¶ 27. This website contains links to a brochure and a one-page product guide, as well as offers some of the same workshops, products, and other services as ExpertOJT.com. Id. at ¶ 28. The company logo used in the brochure and product guide uses the

---

[3] Mr. LePore is the president and sole shareholder of GLS. Doc. 1 at ¶ 3. GLS is a New York corporation with its principal place of business located in the County of Monroe, New York. Id. at ¶ 4.
[4] Attached to the Complaint is a copy of a letter sent from Plaintiffs to Mr. LePore, stating that Mr. LePore is "not authorized to conduct the Expert OJT Workshop, purchase materials, or certify people to be Expert OJT trainers . . .", is "not authorized to use [Expert OJT's] client list . . ." and is "prohibited from conducting the eOJT Live! Webinar . . ." or reselling any Expert OJT templates or other materials. See Doc. 1, Ex. A.
[5] Mr. LePore is the president and sole shareholder of EOJT. Doc. 1 at ¶ 3. EOJT is a New York corporation with its principal place of business located in the County of Monroe, New York. Id. at ¶ 5.

"Expert OJT" trade name, even though the website contains a corporate logo utilizing the "Enterprise OJT" trade name.[6] Id. at ¶ 29. Further, the website repeatedly refers to the "Expert OJT System," as well as advertises Plaintiffs' other products and services, including the eOJT Live! Webinar. Id. at ¶ 30. Plaintiffs allege that Defendants' conduct constitutes (1) false designation of origin, (2) false or misleading description, (3) infringement of Plaintiffs' trade dress, and (4) false or misleading representation that the products or services offered originate from or are authorized by Plaintiffs, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Id. at ¶ 39.

## III. Legal Standards

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that "the plaintiff need only make a prima facie showing of personal jurisdiction," and "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). However, the plaintiff bears the burden of alleging personal jurisdiction, FED. R. CIV. P. 8(a), and ultimately must prove jurisdiction by a preponderance of the evidence. "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). But where the court addresses the question without an evidentiary hearing, "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id. In considering a challenge to personal jurisdiction, "the court must construe all relevant

---

[6] Attached to the Complaint are copies of screenshots taken from EnterpriseOJT.com. See Doc. 1, Ex. B.

pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

To determine whether it has personal jurisdiction over the defendants, the Court must resolve two issues: (A) whether the action falls within the ambit of Virginia's long-arm statute, VA. CODE ANN. § 8.01-328.1, and (B) whether the due process clause of the Fourteenth Amendment permits jurisdiction. ESAB Group v. Centricut, 126 F.3d 617, 623 (4th Cir. 1997). "[I]t is well-settled that the provisions of § 8.01-328.1 [Virginia's long-arm statute] extend personal jurisdiction to the outermost boundaries of due process." DeSantis v. Hafner Creations, Inc., 949 F. Supp. 419, 422 (E.D. Va. 1996) (citations omitted); Chung v. NANA Development Corp., 783 F.2d 1124, 1127 n.2 (4th Cir. 1986) (noting because "the Virginia long-arm statute has been repeatedly construed to assert jurisdiction to the extent due process permits . . . the state law and due process analyses are identical"). Therefore, the two-step personal jurisdiction inquiry is effectively merged, though it remains possible for there to exist personal jurisdiction under the due process clause and still not meet the standards required by § 8.01-328.1. See id. ("Virginia's long-arm statute provides a ceiling of procedural protections above the federal floor of due process.") (citations omitted).

Due process requires that a defendant who is not present in the forum must "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (internal quotations omitted). Under this due process analysis, the Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. To establish specific jurisdiction, a plaintiff must demonstrate that "the defendant has 'purposefully directed' his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984),

5

and that the alleged injuries 'arise out of or relate to' those activities." <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414 (1984).  If the cause of action does not arise out of or relate to the defendant's contacts with the forum state, the plaintiff must demonstrate that the defendant's contacts with the forum are "continuous and systematic" so as to support the exercise of general personal jurisdiction.  <u>Helicopteros,</u> 466 U.S. at 415–16.

### B. Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim.  <u>See Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In considering such a motion, a court should accept as true all well-pleaded allegations and view the claim in the light most favorable to the claimant.  <u>See De Sole v. United States</u>, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (<u>abrogated by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982)).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).  Indeed, the legal framework of a claim must be supported by factual allegations that "raise a right to relief above the speculative level." <u>Id.</u> In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court expanded upon <u>Twombly</u> by articulating the two-pronged analytical approach to be followed in any Rule 12(b)(6) test.

First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. Id. at 680. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. Id. at 681. (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 679–80. The plausibility standard demands more than a showing of "a sheer possibility that a defendant has acted unlawfully." Id. at 678. That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, without converting the motion into one for summary judgment. However, there are a number of exceptions to this rule. Specifically, a court "may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint").

## IV. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants assert that this Court lacks personal jurisdiction over them for the following reasons: (1) Two of the three defendants, Generative Learning Systems, Inc. ("GLS") and Expert OJT, Inc. ("EOJT"), never transacted any business in Virginia; (2) Peter A. LePore

7

("LePore") only visited Virginia once a year from approximately 2000 until 2010 for the purpose of conducting a two or three day workshop at Plaintiffs' request, which fails to support the exercise of general jurisdiction;[7] and (3) the website relied upon by Plaintiffs fails to establish the existence of specific jurisdiction with respect to Mr. LePore because there is no evidence that any Virginian made a purchase or engaged in similar interaction with the website at issue.[8]

In response, Plaintiffs first assert that Defendants waived the defense of lack of personal jurisdiction. Plaintiffs indicate that both Mr. LePore's and EOJT's responsive pleadings were supposed to be filed by December 8, 2011, while GLS's responsive pleading was due on or before December 20, 2011. Mr. LePore and EOJT, however, filed their Answer jointly with GLS on December 20, 2011. On December 27, 2011, Defendants Mr. LePore and EOJT filed a motion for leave to file an untimely responsive pleading pursuant to FED. R. CIV. P. 6(b), which was opposed by Plaintiffs. Plaintiffs agreed to withdraw their opposition based upon Defendants' representation that their Third-Party Complaint would be voluntarily dismissed and amended responsive pleadings would be filed that omitted any claim against Christa Restaneo and Trudy Nelson. An agreed order granting Defendants' motion for extension of time to answer was entered on January 17, 2012. Doc. 20. On January 18, 2012, Defendants filed their Amended Answer, which included the affirmative defense of lack of personal jurisdiction for the first time. Docs. 21-23. According to Plaintiffs, because Defendants failed to include this defense in their initial responsive pleading, the defense of personal jurisdiction has been waived.

Rule 12 indicates that lack of personal jurisdiction is waived only if a party fails to "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of

---

[7] Plaintiffs do not assert that Mr. LePore offered any goods or services on these visits in violation of their trademark rights.
[8] Defendants characterize the website at issue as a passive website having no interactive capability, as one cannot purchase goods or services using the website.

course." FED. R. CIV. P. 12(h)(1)(B). Pursuant to Rule 15(a)(1), Defendants had 21 days after

serving their Answer to amend it once as a matter of course. Although the Amended Answer

was technically filed after the window under Rule 15(a)(1) closed, the Court specifically granted

Defendants leave to "amend their initial pleadings once as a matter of course under Rule

15(a)(1)" by January 18, 2012. As the agreed order extended the time by which Defendants

could file an amended pleading as-of-course, Defendants' Amended Answer was timely. See

Schwartz v. Chase Home Fin., LLC, No. 10-2129-PHX-FJM, 2010 WL 5151326, at *2 (D. Ariz.

Dec. 13, 2010) (noting that because plaintiff was granted an extension of time to file a response,

that extension applies to the time period in which plaintiff may amend its pleading once as a

matter of right); see also Caro v. Weintraub, No. 3:09-CV-1353, 2010 WL 4514273, at *8 (D.

Conn. Nov. 2, 2010) (declining to find that plaintiff could amend his complaint as a matter of

right because of the Court's order extending the time to respond to a motion to dismiss, where

the order "by its own terms only addressed the response to the motion to dismiss," and did not

address "any amended pleadings Plaintiff might seek to file"). In the instant case, the Court's

order specifically addressed any amended pleadings Defendants could file and extended such

time until January 18, 2012. Accordingly, the Court **FINDS** that the defense of lack of personal

jurisdiction has not been waived.[9]

### 1. Personal Jurisdiction: Mr. LePore and EOJT

Defendants assert that there is no basis for the exercise of specific jurisdiction over EOJT

because the corporation has never conducted any activity in Virginia. Doc. 33 at 5.

Additionally, Defendants raise the same argument with respect to GLS, further noting that

although Plaintiffs assert that Mr. LePore was "operating through his company GLS" while he

---

[9] The Court does not believe it was frivolous for Plaintiffs to assert waiver of the defense, as Defendants argue, but is of the opinion that it may have been so for Defendants to suggest as much.

was in Virginia at Mr. Nelson's request once a year until 2010, "Nelson does not assert any facts establishing that Mr. LePore . . . engaged in any activity in violation of the Lanham Act during his Virginia visits."[10] Id. With respect to Mr. LePore, Defendants argue that the only allegation in support of the exercise of specific jurisdiction is "Mr. LePore's creation and registration of a website that allegedly contains links to materials that improperly use Nelson's marks." Id. at 6. Defendants contend that the website relied on by Plaintiffs for specific jurisdiction is a "passive website," and thus, insufficient to provide the necessary basis for personal jurisdiction. Id. at 8.

When determining specific jurisdiction, a court must consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State, (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). In ALS Scan, the Fourth Circuit considered, as a question of first impression, "whether a person electronically transmitting or enabling the transmission of information via the Internet to Maryland, causing injury there, subjects the person to the jurisdiction of a Court in Maryland." Id. In deciding the issue, the Fourth Circuit adopted the model developed in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). Under this model, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Zippo, 952 F. Supp. at 1124. The Fourth Circuit "adopt[ed] and adapt[ed] the Zippo model . . . conclud[ing] that a State may, consistent with due process, exercise judicial power over a person outside of the State when that

---

[10] Defendants maintain that "[w]hile Mr. LePore was in Virginia at Nelson's request an average of only once a year until 2010, he was not acting on behalf of GLS on any of those occasions." Doc. 33 at 5. Plaintiffs, however, assert that "[f]or several years prior to 2010, LePore, operating through his company, GLS, was one of Expert OJT's associates." Doc. 1 at ¶ 17.

person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." <u>ALS Scan</u>, 293 F.3d at 714.

Here, Defendants fail to recognize that Mr. LePore and EOJT manifested an intent to target customers and the public in Virginia, as evidenced by the contents of EOJT's website. In fact, the website owned by Mr. LePore and his company, EOJT, specifically advertised workshops in Williamsburg, Virginia, on February 22-23, 2011; May 17-18, 2011; August 16-17, 2011; and November 1-2, 2011 as "Upcoming Events." <u>See</u> Doc. 1, Ex. B. The website at issue was designed to attract a Virginia audience, thus demonstrating that Mr. LePore and EOJT purposefully directed their activity in a substantial way to Virginia. By advertising four upcoming workshops in Virginia, Mr. LePore and EOJT targeted customers in Virginia for the purpose of providing "an affordable option for small organizations who are looking to build their training expertise, or larger organizations who are exploring the idea of bringing the Enterprise OJT Performance System into their operations on a larger scale." <u>Id.</u> The website does not merely "make information available to those who are interested in it," but advertises specific events scheduled to be held in Virginia. Accordingly, the website at issue satisfies the first two prongs articulated in <u>ALS Scan</u> with respect to Mr. LePore and EOJT: directing electronic activity into Virginia with the manifested intent of engaging in business or other interactions within Virginia. Lastly, the third prong, specifically that the activity creates, in a person within the State, a potential cause of action cognizable in the State's courts, is satisfied by the fact that Nelson & Associates is a Virginia corporation whose trade name and trade dress were allegedly misused by Defendants. Accordingly, the Court **FINDS** that there is specific jurisdiction with

respect to Mr. LePore and EOJT and **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction over these two defendants.

## 2. *Personal Jurisdiction: GLS*

The allegations in the Complaint with respect to GLS consist of the following: (1) For several years prior to 2010, Mr. LePore facilitated training programs throughout the country using Expert OJT's materials and that during this time, he operated through his company, GLS, as one of Expert OJT's associates, doc. 1 at ¶¶ 16-17; (2) Mr. LePore, through his companies GLS and EOJT, continues to contact existing and potential clients, using the "Expert OJT" and "EOJT" trade names and intentionally misleads those clients into believing that he is affiliated with Expert OJT, id. at ¶ 22; and (3) Mr. LePore, through his companies GLS and EOJT, continues to conduct training programs for corporate clients using the "Expert OJT" and "EOJT" trade names without Expert OJT or Nelson's permission or knowledge and without Plaintiffs receiving attribution or compensation, id. at ¶ 24.

At this point, Plaintiffs only have to make a prima facie showing of personal jurisdiction with respect to GLS.[11] The Complaint states that "[f]or several years prior to 2010, LePore, operating through his company GLS, was one of Expert OJT's associates." Doc. 1 at ¶ 17. Because a court, in considering a challenge to personal jurisdiction on the basis of motion papers and the allegations of the Complaint, "must construe all relevant pleading allegations in the light most favorable to the plaintiff," the allegation that Mr. LePore operated through his company GLS is assumed for purposes of the jurisdictional question. Plaintiffs have proffered some

---

[11] "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when . . . the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

evidence regarding GLS's contacts with Virginia, specifically contacts associated with the workshops conducted once a year at Nelson's request.  Accordingly, the Court **FINDS** that Plaintiffs have made a sufficient prima facie showing of jurisdictional facts with respect to GLS to withstand the motion to dismiss and **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction over GLS pending development of further facts on this issue.  See Combs, 886 F.2d at 676 ("If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.").

### B. Motion to Dismiss for Failure to State a Claim

Plaintiffs have filed a Motion to Dismiss Defendants' Counterclaim on the basis that it "rests upon naked assertions and formulaic recitations of the elements of alleged claims," and thus fails to meet the applicable pleading standards of Twombly and Iqbal.  Doc. 26 at 1.

### 1. Choice of Law

As a preliminary matter, Defendants assert that New York state law should be applied, while Plaintiffs apply Virginia law.  Doc. 27 at 1.  With respect to the counterclaims for breach of contract and unjust enrichment, "Virginia adheres to the principle that the law of the place of performance governs questions arising in connection with the performance of a contract." Equitable Trust Co. v. Bratwursthaus Mgmt. Corp., 514 F.2d 565, 567 (4th Cir. 1975).  Here, it is unclear where performance of the purported contract was to take place.  While Defendants assert that performance of the purported contract "occurred almost exclusively in the State of New York," there is nothing to support such an assertion other than the fact that Mr. LePore resides there.  However, there is evidence that Mr. LePore conducted workshops in Virginia as a result of the parties' relationship.  Further, Mr. LePore's website advertised "Upcoming

Workshops" that were scheduled to take place in Williamsburg, Virginia. Because Virginia is the only state specifically identified by the parties as one in which the workshops took place, the Court will apply Virginia law with respect to the contract related claims for the purpose of deciding Plaintiffs' motion to dismiss these counterclaims.

Defendants also assert numerous tort related counterclaims. "Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions . . . ." Milton v. IIT Research Inst., 138 F.3d 519, 521 (4th Cir. 1998). Although Defendants contend that the alleged injuries were felt in New York because "Mr. LePore resides in New York and transacts business in New York, individually, and as an agent of the Defendant corporations," doc. 27 at 6, Defendants fail to recognize that because a tort is a "civil wrong or injury; a wrongful act . . . Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt." Milton, 138 F.3d at 522. Here, there is nothing in the Counterclaim, Declaration, nor Memorandum in Opposition indicating where the alleged tortious acts took place. The fact that Mr. LePore resides in New York and transacts business there is not enough to compel the conclusion that New York law should apply merely because that's where the effects of the allegedly wrongful acts would be felt. Because it is presently unclear where the allegedly wrongful acts took place, the Court will also apply Virginia law with respect to the tort related counterclaims in deciding Plaintiffs' Motion to Dismiss Defendants' Counterclaim.

Lastly, Defendants assert that New York law should apply to the final counterclaim for libel. "Virginia applies the *lex loci delicti* rule, that is, the law of the place of the wrong, to defamation actions." Wiest v. E-Fense, Inc., 356 F. Supp. 2d 604, 608 (E.D. Va. 2005). Thus, Virginia looks to where the statement was published. See Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 915 n.4 (E.D. Va. 2004) (applying Virginia law after determining that

the statements at issue were allegedly published in Virginia).  Defendants' contention that it is "likely" that many of the recipients reside or conduct business in New York and "unlikely" that many of the recipients reside or transact business in Virginia fails to shed any light on which state's law should be applied.  Similar to Defendants' argument with respect to the other counterclaims, it is completely unclear where the statement was published, or received.  See Hydro Eng'g, Inc. v. Landa, Inc., 231 F. Supp. 2d 1130, 1135 (D. Utah 2002) (noting that the place of publication for an alleged defamation claim premised upon dissemination of an email is the place where the email was received).  As such, the Court will apply Virginia law to Defendants' final counterclaim for libel.

## 2.  Counterclaim for Breach of Contract

In Count One of the Counterclaim, Defendants allege that LePore and Nelson entered into a written agreement on or about August 24, 2010, in which they agreed to become business partners.[12]  Doc. 21 at ¶¶ 11-12.  Defendants further allege that the Partnership was to remain in effect until September 1, 2011, and that pursuant to the Contract, LePore would become the exclusive representative of the Partnership and the "Expert OJT system" with respect to Proctor & Gamble.  Id. at ¶¶ 13-14.  Count One of the Counterclaim further states that pursuant to the Contract, Mr. LePore was entitled to receive sixty (60) percent of all revenue of the Partnership received from Proctor & Gamble and sixty (60) percent of all revenue of the Partnership earned through the operation of workshops.  Id. at ¶¶ 15-16.  Based on these alleged facts, Defendants contend the following:  (1) Plaintiffs have failed to fulfill their obligations under the Contract;

---

[12] Defendants have submitted an unsigned copy of a "Letter of Agreement," dated August 24, 2010, along with their Memorandum in Support of Cross-Motion to Dismiss for Lack of Personal Jurisdiction. Docs. 33-35. Plaintiffs assert that the fact the purported contract is unsigned "calls into question whether a valid contractual agreement can be pleaded by LePore in the first instance." Doc. 36 at 3. Although Plaintiffs focus on the fact that the purported agreement is unsigned, this is not a sufficient reason to find that Defendants have failed to plead the existence of a legally enforceable obligation. All Defendants must do is allege the existence and content of a contract sufficient to state a claim, which they have done.  There is no requirement that the signed agreement must be attached to Defendants' pleading.

(2) Plaintiffs have failed, despite due demand, to share revenue of the Partnership with Defendants pursuant to the Contract; (3) Plaintiffs have materially breached the Contract; and (4) as a direct and proximate result of Plaintiffs' material breach, Defendant LePore has been damaged in an as yet unascertained amount, but which amount is believed to exceed $1,000,000.

The elements of a breach of contract action, under Virginia law, are (1) a legally enforceable obligation of defendant to plaintiff, (2) defendant's violation or breach of that obligation, and (3) injury or damage to plaintiff caused by the breach of obligation. Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 154 (Va. 2009). Here, paragraphs eleven (11) through seventeen (17) of Defendants' counterclaim for breach of contract allege that a written agreement was entered into by the parties and sets forth the general parameters of that agreement, including revenue sharing and duration of performance. Specifically, Defendants have alleged that pursuant to the parties' agreement, Mr. LePore was to receive sixty (60) percent of the revenue received from both Proctor & Gamble and the operation of other workshops. Defendants further allege that Plaintiffs have failed, despite due demand, to share such revenue. As such, Defendants claim that Mr. LePore has been damaged in an amount believed to exceed $1,000,000.00. Although the amount of damages must ultimately be proven with reasonable certainty, at this stage it is sufficient for Defendants to allege that "[a]s a result of Nelson's conduct, Defendants have been damaged in an as yet unascertained amount, but which amount is believed to exceed $1,000,000.00." Doc. 21 at ¶ 49. While the issue as to whether damages could be proven with reasonable certainty would certainly be a summary judgment issue, Defendants' claim that Mr. LePore has been damaged in amount believed to exceed $1,000,000.00 does not run afoul of either Iqbal or Twombly. Here, Defendants have

16

pled sufficient factual information to support this claim. Accordingly, the Court **DENIES** Plaintiffs' motion to dismiss the counterclaim for breach of contract.

### 3. Counterclaim for Breach of Fiduciary Duty

In Count Two of the Counterclaim, Defendants allege the following: (1) Pursuant to the Contract and the Partnership, Nelson owed a fiduciary duty to Defendant LePore; (2) Upon information and belief, Nelson breached his fiduciary duty to LePore; (3) As a result, Defendant LePore has been damaged in an as yet unascertained amount, but which amount is believed to exceed $1,000,000.00. Doc. 21 at ¶¶ 24-26. Plaintiffs argue that "no substantive factual allegations are set forth anywhere in the Counterclaim that support the legal conclusion that a partnership under Virginia law was established." Doc. 26 at 5. Rather, Plaintiffs argue that Defendants' allegation that a fiduciary duty existed between Nelson and LePore is insufficient because "it simply is a conclusion that builds on a prior conclusion . . . that the Contract formed a partnership." Id.

As the Amended Answer only describes a purported agreement to share revenues, Defendants have failed to plead sufficient factual allegations with respect to the existence of a Partnership, and thus have failed to state a claim for breach of fiduciary duty. Defendants merely re-allege that Mr. LePore was to receive sixty (60) percent of revenue generated from accounts associated with Proctor & Gamble and sixty (60) percent of all revenue earned through the operation of other workshops. Doc. 21 at ¶¶ 15-16. Although Defendants characterize the business relationship between Mr. Nelson and Mr. LePore as a Partnership because of this factual allegation, it is plain that such an allegation by itself is not enough to establish the existence of a Partnership. Accordingly, the Court **FINDS** that Defendants have failed to plead sufficient factual allegations to support the legal conclusion that a Partnership existed, as

17

opposed to a business relationship where Mr. LePore was permitted to share revenue in exchange for work or services performed. The Court thus **GRANTS** Plaintiffs' motion to dismiss the counterclaim for breach of fiduciary duty.

### 4. Counterclaim for Unjust Enrichment

In Count Three of the Counterclaim, Defendants allege the following: (1) Defendant LePore has performed certain services for and invested assets in the Partnership; (2) Upon information and belief, Nelson has been enriched as the result of Defendant LePore's services for and investment of assets in the Partnership; (3) Upon information and belief, Nelson was aware he was being enriched by Defendant LePore's services for and investment of assets in the Partnership; (4) Upon information and belief, as a result of the foregoing, Nelson has been unjustly enriched; and (5) Defendant LePore is entitled to damages in an amount to be determined. Doc. 21 at ¶¶ 28-32. The elements of a claim for unjust enrichment, under Virginia law, are (1) A benefit conferred on the defendant by the plaintiff; (2) Knowledge on the part of the defendant of the conferring of the benefit; and (3) Acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. Centex Constr. v. Acstar Ins. Co., 448 F. Supp. 2d 697, 707 (E.D. Va. 2006).

Here, Defendants have failed to plead the third element of a claim for unjust enrichment under Virginia law: acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. Id. All Defendants allege is that Nelson has been enriched as a result of Defendant LePore's services for and investment of assets in the Partnership and that Nelson was aware he was being enriched. Further, Defendants have failed to allege what services were performed, as well as the value of

18

those services and when those services were performed. Defendants have failed to do the same with respect to the alleged assets invested by Mr. LePore. Defendants' allegations are conclusory and do not meet the applicable pleading standards of Twombly and Iqbal. Accordingly, the Court **GRANTS** Plaintiffs' motion to dismiss the counterclaim for unjust enrichment.

## 5. Counterclaims for Tortious Interference with Contractual Relations, Business Relations, and Prospective Advantage

In Counts Four, Five and Six of the Counterclaim, Defendants allege tortious interference with contractual relations, business relations, and prospective advantage. The elements of a claim for tortious interference with contractual rights or business expectancies, under Virginia law, are (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the inteferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 145 (2009). As Counts Four, Five, and Six are largely duplicative, the Court will consider these three counts together.

With respect to Count Four (tortious interference with contractual relations), Defendants assert that they pled the following sufficient factual basis to establish the requisite elements: (1) Beginning in or about August 2010, the Partnership entered into valid contracts with numerous third parties; (2) Nelson agreed to facilitate and develop new and present contractual relationships between the Partnership and its clients; (3) Nelson did undertake to procure the breach of those contracts between the Partnership and third parties and Defendants and third parties; (4) Nelson's conduct was intentional and unjustified; (5) As a result of Nelson's conduct

in procuring said breach of contracts, third parties did breach their contracts with the Partnership and Defendants; and (6) Defendants have been damaged. Doc. 21 at ¶¶ 34-41.

With respect to Count Five (tortious interference with business relations), Defendants assert that they pled the following sufficient factual basis to establish the requisite elements: (1) Between 2010 and the present date, Defendants were actively engaged in business relations with third parties; (2) Nelson intentionally, maliciously, and involving the use of dishonest, unfair and improper means did undertake to interfere with those relations; and (3) As a result of Nelson's conduct, Defendants' relationships with third parties have been damaged. Id. at ¶¶ 44-48. With respect to Count Six (tortious interference with prospective advantage), Defendants assert that they pled the following sufficient factual basis to establish the requisite elements: (1) Between 2010 and the present date, Defendants were actively engaged in entering into contracts with prospective clients; (2) Nelson was aware of proposed contracts between the Defendants and third parties; (3) Nelson did undertake to prevent Defendants from entering into contracts with third parties; (4) Nelson's conduct was intentional, malicious and involved the use of dishonest, unfair and improper means; and (5) As the sole and direct result of Nelson's conduct, third parties did decide not to enter into contracts with Defendants. Id. at ¶¶ 51-56.

First, Defendants have failed to allege the existence of any contractual or business relationships, other than "contracts with numerous third parties" and "business relations with third parties." Id. at ¶¶ 35, 44. Second, Defendants also fail to sufficiently allege the nature of Nelson's wrongful conduct with respect to the alleged interference with contracts and business relations with third parties. Third, with respect to Defendants' counterclaim for tortious interference with prospective advantage, the Amended Answer once again fails to sufficiently allege the nature of the alleged wrongful conduct, as well as fails to identify anything other than

20

proposed contracts between Defendants and third parties.  Fourth, there is nothing alleged about

Plaintiffs' contact with the source of Defendants' alleged business expectancy.  This is important

because "like the existence of a competitive relationship between the plaintiff and the defendant,

contact by the defendant with the source of the plaintiff's business expectancy, direct or indirect,

is a de facto prima facie element of a claim for tortious interference with a business expectancy."

17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd., 373 F. Supp. 2d 584, 601 (E.D. Va.

2003).  In 17th Street Associates, the district court explained, "[t]he reason that the tort of

intentional interference with a business expectancy always involves a competitive relationship

and allegations of direct contact with the source of the expectancy are self-evident:  they provide

prima facie evidence of a motive to interfere and indicate that the interference actually took

place."  Id.  However, Defendants have failed to plead anything about Nelson's contact with any

alleged business expectancy.  For these reasons, the Court **GRANTS** Plaintiffs' motion to

dismiss all three of Defendants' tortious interference counterclaims.

### 6.  Counterclaim for Defamation (Libel)

  In Count Seven of the Counterclaim, Defendants allege the following:  (1) Between

March and April 2011, Nelson published statements about the Defendants to numerous parties;

(2) Upon information and belief, Nelson published at least some of those statements by e-mail;

(3) Upon information and belief, said published statements include statements contained in

paragraphs "1" through "6" of the e-mail transmission attached hereto as Exhibit "A"; (4) Upon

information and belief, over one hundred (100) persons and/or companies received the subject

e-mail, including, but not limited to, the following . . ."; (5) The statements made by Nelson are

false; (6) At the time Nelson made the statements, he knew they were false or, upon reasonable

inquiry, would have discovered they were false; and (7) As a result of Nelson's statements,

Defendants have been damaged in an as yet unascertained amount, but which amount is believed to exceed $1,000,000.00. Doc. 21 at ¶¶ 59-65.

In Virginia, the elements of common law defamation are the (1) publication of (2) an actionable statement with (3) the requisite intent. Wolf v. Federal Nat'l Mortg. Ass'n, 830 F. Supp. 2d 153, 168 (W.D. Va. 2011). Further, a "statement is actionable if it contains a false assertion of fact that 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Id. "At common law, words that impute to a person the commission or a crime of moral turpitude or which prejudice a person in his profession or trade are actionable as defamation per se." Besen v. Parents and Friends of Ex-Gays, Inc., No. 3:12CV204-HEH, 2012 WL 1440183, at *3 (E.D. Va. Apr. 25, 2012). Lastly, a plaintiff must also allege that the defendant had the "requisite intent." Wolf, 830 F. Supp. 2d at 168.

With respect to the third element, Defendants merely assert that "[a]t the time Nelson made the statements, he knew they were false or, upon reasonable inquiry, would have discovered they were false." Doc. 21 at ¶ 64. There is no allegation that any statements were made maliciously or with the purpose and intent of injuring Mr. LePore's reputation. Thus, Defendants have failed to allege any facts supporting the notion that Nelson had the requisite intent to defame Mr. LePore.

With respect to the second element, there is no allegation made that the statements are defamatory, or that any of the alleged statement make Mr. LePore appear odious, infamous or ridiculous. See Nigro v. Virginia Commonwealth Univ./Med. Coll. of Virginia, No. 10-2425, 2012 WL 2354635, at *6 (noting that "[t]o be actionable, the statement must be both false and defamatory," meaning that the allegedly "defamatory words are those that make the plaintiff

appear odious, infamous, or ridiculous") (quoting <u>Chapin v. Knight-Ridder, Inc.</u>, 993 F.2d 1087, 1092 (4th Cir. 1993)). Rather, the only allegation made is a blanket assertion that the statements are "false." Such an allegation, put forth in vague and conclusory terms, runs afoul of <u>Iqbal</u> and <u>Twombly</u>. For these reasons, the Court **GRANTS** Plaintiffs' motion to dismiss the counterclaim for defamation.

## V. CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion to Dismiss Defendants' Counterclaim is **GRANTED IN PART** and **DENIED IN PART**. Doc. 25. The Court **DENIES** the motion to dismiss the counterclaim for breach of contract and **GRANTS** the motion to dismiss all remaining counts of Defendants' Counterclaim. Further, the Court **DENIES** Defendants' Cross Motion to Dismiss for Lack of Personal Jurisdiction. Docs. 30-32.

Lastly, Defendants have requested leave to amend any counterclaims that the Court finds do not sufficiently state a claim upon which relief can be granted. Although Defendants have already had ample opportunity to prepare a Counterclaim, the Court will grant Defendants leave to amend such counterclaims within ten (10) days from the date of this Order, if Defendants be so advised. The Court observes that the multiplicity of theories of recovery do not add to the persuasiveness of the Counterclaim. If Defendants take advantage of the opportunity to amend, Plaintiffs may file an answer to the amended counterclaim within 10 (days). Additionally, the Court directs counsel to schedule a Rule 16(b) conference with its courtroom deputy within two (2) weeks of the date of this Order, as the Court will permit no further delays associated with the convoluted pleading schedule.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

23

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge


_____
*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: July 5th, 2012

24